IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PLANTATION BAY, LLC,<br><br>             Plaintiff,<br><br>    v.<br><br>STEWART TITLE GUARANTY<br>COMPANY,<br><br>             Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-2042 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Thomas W. Sheridan, Esq.
Christopher D. Hinderliter, Esq.
Samantha J. Banks, Esq.
Sheridan & Murray, LLC
424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034
     Attorneys for Plaintiff, Plantation Bay, LLC

Frederick W. Alworth, Esq.
Joshua R. Elias, Esq.
Kevin R. Reich, Esq.
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102
     Attorneys for Defendant, Stewart Title Guaranty Company

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

     This case arises from an 89-year-old restriction on the use

of a parcel of land in the City of Somers Point, New Jersey.

Plaintiff Plantation Bay, LLC, the landowner, brings this suit

against Defendant Stewart Title Guaranty Company, the issuer of

its title insurance policy, alleging that Defendant misrepresented the nature and enforceability of a 1927 deed restriction on its Property and that Defendant has breached the insurance contract by failing to pay for the Property's loss in value caused by that restriction. Defendant has filed a motion to dismiss, arguing that Plaintiff's losses from the deed restriction are excluded from coverage under its title insurance policy and that Plaintiff has failed to state a claim under the New Jersey Consumer Fraud Act. For the following reasons, the Court will grant in part and deny in part Defendant's motion.

## II.   BACKGROUND[1]

Plaintiff Plantation Bay, LLC owns a piece of property ("the Property") in the City of Somers Point, Atlantic County, New Jersey. (Am. Compl. ¶ 42.) The Property contains an 18-hole golf course that was originally constructed in 1923. (Id. ¶ 43.) When the Property was transferred to a new owner in 1927, the deed contained a restriction ("the 1927 Deed Restriction") that proscribed that the Property "shall be used for no other purpose than a Golf Course." (Id. ¶ 45.)

---

[1] For purposes of the pending motions, the Court accepts as true the version of events set forth in Plaintiff's Complaint, documents explicitly relied upon in the Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

2

Plaintiff purchased the Property on March 16, 2004 for $9,100,000. (Id. ¶ 50.) The deed that transferred the Property to Plaintiff stated that the transfer was "UNDER AND SUBJECT TO any and all restrictions of record." (Id. ¶ 51.) That deed was recorded on August 17, 2004 and "contains no restrictions, covenants or conditions as to the use of the Property." (Id. ¶ 52.) Plaintiff planned to redevelop the Property with a few hundred housing units, including units designated for affordable housing, and a hotel; Plaintiff alleges that it was told "that there were no deed restrictions limiting its ability to do so." (Id. ¶ 53.)

Consistent with its obligations under its purchase agreement, Plaintiff engaged Defendant Stewart Title Guaranty Company, through its agents Title Company of New Jersey and William Gillingham, to order a title commitment and to issue Plaintiff an owner's policy of title insurance for $6,752,500. (Id. ¶ 55.) Defendant was allegedly aware of Plaintiff's redevelopment plan for the Property. (Id. ¶ 56.) Defendant knew about the 1927 Deed Restriction, but represented to Plaintiff "that the deed restriction was NOT enforceable and would NOT act to prevent Plaintiff, Plantation Bay, LLC from developing the Property pursuant to the Redevelopment plan" because the restriction was a personal covenant between the grantor and the grantee of the 1927 deed and did not run with the land. (Id. ¶

3

58.) On the basis of that advice, Plaintiff finalized its purchase of the Property and purchased its title insurance policy. (Id. ¶ 65.)

Pursuant to Plaintiff's title insurance policy, Defendant "insured against loss or damage, up to the policy limits of $6,752,500, by reason of any defect in or lien or encumbrance on the title, subject to exclusions and exceptions from coverage." (Id. ¶ 61.) The title jacket of Plaintiff's title insurance provides that

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damages, costs, attorneys' fees or expenses which arise by reason of: . . . 3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant.

(Am. Compl. Ex. A (Title Insurance Policy) [Docket Item 18-1].) While an original proposed version of the insurance policy listed the 1927 Deed Restriction as an exception to coverage, Defendant removed the 1927 Deed Restriction as an exception under the policy at Plaintiff's request, and the 1927 Deed Restriction appears nowhere in the policy. (Id. ¶¶ 61-64; see also Policy at Schedule B.)

In November 2004, the Somers Point City Counsel designated part of the City, including Plaintiff's Property, for redevelopment, and directed Plaintiff to create a redevelopment plan for the land. (Id. ¶ 75.) A resident association, the

4

Concerned Citizens of Somers Point, Inc. ("Concerned Citizens"), opposed Plaintiff's plan to replace the golf course on the Property with housing and claimed that the 1927 Deed Restriction was valid and enforceable and would prevent Plaintiff's plan to building housing on the site. (Id. ¶ 74.) The City Council never took action on Plaintiff's proposed redevelopment plan to build 550 housing units with 20% reserved for affordable housing on the Property. (Id. ¶ 84.)

On July 21, 2006, Plaintiff filed suit against the City of Somers Point, the City of Somers Point City Council, and the City of Somers Point Planning Board in the Superior Court of New Jersey, seeking a declaration that the City was in violation of its constitutional obligation to provide affordable housing, as a way to force action on its redevelopment plan for the Property ("the Committee on Affordable Housing Litigation" or "the COAH litigation"). (Id. ¶ 86.) See Plantation Bay, LLC v. City of Somers Point, et al., Case No. ATL-L-7302-06. Concerned Citizens intervened in Plaintiff's Superior Court lawsuit, claiming that the 1927 Deed Restriction prohibited Plaintiff's redevelopment plan. (Id. ¶ 87.) Consistent with the terms of Plaintiff's title insurance policy, Plaintiff kept Defendant informed of the COAH litigation, and Defendant retained a law firm to represent Plaintiff in the COAH litigation and prosecute its interest in the Property. (Id. ¶¶ 85, 88-89.)

5

The Superior Court held in March of 2009 that the 1927 Deed Restriction ran with the land and had not been abandoned, but reserved judgment as to whether enforcement of the restriction would be unjust or whether the 1927 Deed Restriction should be modified. (Id. ¶¶ 90-91.) Plaintiff thereafter provided Defendant with a Notice of Loss or Damage, stating that as a result of the Superior Court's Order Plaintiff had suffered a loss in value to the Property in excess of Plaintiff's $6 million policy limit. (Id. ¶¶ 92-93; see also Am. Compl. Ex. C (Proof of Loss Letter) [Docket Item 18-3].) Defendant disclaimed coverage for any economic loss as a result of the Superior Court's findings and stated that Plaintiff's Proof of Loss was premature. (Id. ¶¶ 94-96.)

The Superior Court ultimately held in January of 2011 that the 1927 Deed Restriction was enforceable, with certain modifications. (Id. ¶ 98.) On the advice of counsel retained by Defendant, Plaintiff agreed to mitigate its damages and accept modified "restrictions on the use, sale and financial operations" on the Property. (Id. ¶¶ 98-99.) Plaintiff avers that the Superior Court's enforcement of the modified 1927 Deed Restriction has "greatly" limited its ability to develop the Property and caused a diminution in the value of the Property in excess of its $6 million title insurance policy with Defendant. (Id. ¶¶ 101-105.) It asserts that the "modified Deed Restriction

6

is a defect in title which caused Plaintiff to suffer a covered loss under the title insurance policy issued by Defendant Stewart Title Guaranty Company." (Id. ¶ 99.) Defendant has not "take[n] any meaningful action to process and pay Plaintiff's claim for coverage under this Policy in the amount of $6,752,500." (Id. ¶ 109.)

Plaintiff initiated this lawsuit against Stewart Title Guaranty Company on March 20, 2015. [Docket Item 1.] This Court dismissed the Complaint, finding that Plaintiff had failed to adequately establish this Court's jurisdiction, and granted leave to amend. [Docket Items 16 & 17.] Plaintiff timely filed this Amended Complaint. [Docket Item 18.] Defendant filed the instant Motion to Dismiss [Docket Item 22] which is now fully briefed, including Plaintiff's request to file a sur-reply. [Docket Item 30.][2] The Court will decide these motions without holding oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

---

[2] For good cause shown, the Court will grant Plaintiff's motion for leave to file a sur-reply nunc pro tunc.

7

rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

In addition, Rule 9(b), Fed. R. Civ. P., imposes a heightened pleading standard on fraud-based claims, requiring a party to "state the circumstances constituting fraud with particularity." Klein v. Gen. Nutrition Companies, Inc., 186 F.3d 338, 344 (3d Cir. 1999); see also Frederico v. Home Depot,

8

507 F.3d 188, 202-03 (3d Cir. 2007) (applying Fed. R. Civ. P. 9(b) to an NJCFA claim). To satisfy this standard, the plaintiff must "plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." In re Riddell Concussion Reduction Litig., 77 F.Supp.3d 422, 433 (D.N.J. 2015). This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

## IV. DISCUSSION

Defendant raises two arguments in its motion to dismiss: first, that Plaintiff has not stated a breach of contract or bad faith claim because any losses caused by the 1927 Deed Restriction are excluded from coverage under the insurance contract, and second, that Plaintiff's claim under the New Jersey Consumer Fraud Act fails as a matter of law. For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

### A. Plaintiff Has Stated a Claim for Breach of Contract and Bad Faith.

First, Defendant argues that the Amended Complaint does not state a claim for breach of contract or bad faith because the loss in value to the Property is not covered by Plaintiff's

9

title insurance policy. It is undisputed that Plaintiff's title insurance policy includes both "exceptions from coverage" specific to Plaintiff's Property listed at Schedule B (see Policy [Docket Item 18-1] at 22-23 of 25) and "exclusions from coverage" general to all title insurance policies on the title jacket of the policy. (See id. at 2 of 25.) Specifically, the policy excludes from coverage "Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant." ("Exclusion 3(a)".) (Id.)

Defendant argues that because Plaintiff "assumed or agreed" to a defect in title when it participated in the settlement agreement to the COAH Litigation, Exclusion 3(a) bars Plaintiff's request for compensation for the loss in value to the Property. In opposition, Plaintiff argues that the relevant defect in title is the 1927 Deed Restriction, which pre-dated Plaintiff's ownership of the Property and to which it never assented, rendering Exclusion 3(a) inapplicable. Accordingly, this motion requires the Court to decide (1) what the relevant defect in title causing Plaintiff's damages is, and (2) whether Plaintiff "agreed" to that defect which limits its ability to develop the Property, within the meaning of Exclusion 3(a).

"[I]nsurance policies must be construed to comport with the reasonable expectations of the insured." Gibson v. Callaghan, 730 A.2d 1278, 1283 (N.J. 1999) (citing American Motorists Ins.

10


Co. v. L-C-A Sales Co., 713 A.2d 1007 (N.J. 1998)).

"Exclusionary clauses are presumptively valid and are enforced if they are specific, plain, clear, prominent, and not contrary to public policy." Flomerfelt v. Cardiello, 997 A.2d 991, 996 (N.J. 2010). However, "in general, insurance policy exclusions must be narrowly construed" and "the burden is on the insurer to bring the case within the exclusion." Id. at 996-997.

According to Plaintiff's allegations in the Amended Complaint, the "modified Deed Restriction" resulting from the COAH Litigation settlement is plainly a defect in title. (Am. Compl. ¶¶ 23 ("The modified Deed Restriction is a defect in title which caused Plaintiff to suffer a loss which Defendant insured against with the Policy.") & 121 ("It is indisputable that once the modified deed restriction was enforced by Judge Isman in 2011, there was a defect in title and Plaintiff suffered a covered loss under the title insurance policy which required reimbursement by Defendant, Stewart Title.").) Nonetheless, the modified Deed Restriction would not have existed but for the 1927 Deed Restriction and the Superior Court's holding that the Deed Restriction runs with the land. That Plaintiff may have assented to the modified deed restriction as a means of mitigating its loss does not cure the original title defect of which Plaintiff complains.

As Plaintiff points out, the original title insurance policy issued by Defendant to Plaintiff's predecessor in interest to the Property listed the 1927 Deed Restriction as a Schedule B exception to coverage. (Id. ¶¶ 14, 48, 49.) The parties negotiated and revised the terms of Plaintiff's policy, and because Plaintiff would not agree to waive coverage for losses caused by the 1927 Deed Restriction, ultimately removed the 1927 Deed Restriction from the final policy. (Id. ¶¶ 61-64.) The absence of the Deed Restriction as an exception to coverage from the signed contract between the parties suggests that the parties intended for Defendant to insure against any losses caused by that restriction on Plaintiff's ability to redevelop the Property.

In addition, construing the allegations in the Amended Complaint in the light most favorable to Plaintiff, Exclusion 3(a), barring recovery for defects "created, suffered, assumed or agreed to by the insured claimant," is not applicable to Plaintiff's claim for damages caused by the 1927 Deed Restriction. In the context of standard insurance exclusion clauses like Exclusion 3(a), "the term 'created' has been interpreted to mean the idea of knowledge, the performance of some affirmative act by the insured, a conscious or deliberate causation." Feldman v. Urban Comm., Inc., 209 A.2d 640, 648 (N.J. App. Div. 1965). "An insured who creates a defect under a

12

title policy generally engages in some fraudulent or inequitable behavior." Walsh Sec., Inc. v. Cristo Property Mgmt, Ltd., 858 F. Supp. 2d 402, 421 (D.N.J. 2012) (citing Keown v. West Jersey Title and Guaranty Co., 390 A.2d 715, 718 (N.J. App. Div. 1978). In contrast, "the term 'suffer' implies the power to prevent or hinder, and includes knowledge of what is to be done under the sufferance and permission, and the intention that what is done is to be done." Feldman, 209 A.2d at 648. New Jersey courts have not definitively interpreted the terms "assumed" or "agreed to" in this context, but refer to the Sixth Circuit's interpretation defining "assumed" as "require[ing] knowledge of the specific title defect" and "agreed to" as "carr[ying] connotations of 'contracted,' thereby requiring full knowledge by the insured of the extent and amount of the claim against the insured's title" and "some degree of intent." Walsh Sec., 858 F. Supp. 2d at 421-22 (citing American Sav. And Loan Ass'n v. Lawyers Title Ins. Corp., 793 F.2d 780, 784 (6th Cir. 1986)). "[T]he application of exclusionary clauses . . . often turns on notions of equity." American Sav., 793 F.2d at 784.

Defendant points to language in the Superior Court's decision holding that the 1927 Deed Restriction runs with the land, appended to Plaintiff's Proof of Loss letter, wherein the court noted:

13

> On July 29, 2008, the plaintiff and the City tentatively settled this action by agreeing, among other things, to permit the plaintiff to reconfigure its 150 acre golf course and to build an inclusionary housing development on 30 acres of the Golf Course Property. The parties also agreed to secure a conservation restriction for the benefit of the City as authorized by the New Jersey Conservation Restriction and Historic Preservation Restriction Act, N.J.S.A. 13:8B-1 to -9, on the remaining 120 acres of the Golf Course Property.

(Proof of Loss or Damage [Docket Item 18-3] at 13 of 33.) According to Defendant, Plaintiff's participation in the COAH Litigation settlement agreement demonstrates that it "agreed to," or knowingly contracted for, the limitation on its ability to develop the Property as desired.

However, Plaintiff alleges that "Defendant retained a law firm to represent Plaintiff in the COAH litigation" and that "counsel retained by Defendant Stewart Title recommended that Plantation Bay mitigate its damages and accept other restrictions on the use, sale and financial operations on the insured property" in keeping with the requirements of its title insurance policy. (Am. Compl. ¶¶ 89 & 98-99.) Plaintiff's policy requires that the insurer, Stewart Title Guaranty Company, "shall have the right to select counsel of its choice" to represent Plaintiff in any lawsuit litigating any "defect, lien or encumbrance or other matter insured against by this policy," allows that the Company "may pursue any litigation to final

determination," and obligates Plaintiff to "give the Company all reasonable aid . . . in effecting settlement." (Policy at Clause 4 [Docket Item 18-1 at 4 of 25].) Plaintiff's allegations, coupled with the language of its policy, plausibly show a lack of control, intent, or voluntariness in its participation in the COAH Litigation settlement agreement. If Plaintiff did not intend to agree to a defect in title preventing its ability to redevelop the Property, it could not have "assented" or "agreed to" that defect within the meaning of Exclusion 3(a). Again, Plaintiff's compromise in settlement of the COAH litigation is more properly viewed as an attempt to mitigate damages to its development rights caused by the 1927 Deed Restriction.

Accordingly, the Court finds that Plaintiff has sufficiently alleged that it is entitled to insurance compensation for the diminution in value to the Property owing to the enforceability of the 1927 Deed Restriction, and has adequately set forth claims for breach of contract and bad faith. Defendant's motion to dismiss Counts I and II of the Amended Complaint is denied.

### B. Plaintiff Has Not Stated a Claim Under the New Jersey Consumer Fraud Act.

Defendant next argues that Plaintiff's New Jersey Consumer Fraud Act ("NJCFA") claim must be dismissed because the Act does not apply to this case, or in the alternative, because Plaintiff

15

has insufficiently alleged a violation of the Act. The NJCFA, N.J.S.A. § 56:8-1, et seq., makes unlawful "any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in connection with the sale of "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J.S.A. §§ 56:8-1 & 2. To state a claim under the NJCFA, "a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal connection between the defendants' unlawful conduct and the plaintiffs' ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007). The NJCFA is to be liberally construed in favor of consumers. Gennari v. Weichert Co. Realtors, 672 A.2d 1190, 1205 (N.J. 1996). Nonetheless, the NJCFA "is not intended to cover every transaction that occurs in the marketplace, but, rather, its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 514 (3d Cir. 2006) (citing Arc Networks, Inc. v. Gold Phone Card Co., Inc., 756 A.2d 636, 638 (N.J. Super. 2000)).

16

The Court will grant Defendant's motion to dismiss the NJCFA claim because Plaintiff has not adequately identified a particular misrepresentation that forms the basis of Defendant's allegedly unlawful conduct. To state a claim under the NJCFA, a plaintiff must show that the defendant engaged in unlawful conduct that includes employing a misrepresentation or intentionally omitting a material fact. Menkes v. Prudential Ins. Co. of America, 762 F.3d 285 (3d Cir. 2014). "One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." Gennari, 691 A.2d at 365. Here, Plaintiff alleges that Defendant "affirmatively stated to Plantation Bay, LLC's representatives . . . that the deed restriction was NOT enforceable and would NOT act to prevent Plaintiff, Plantation Bay, LLC from developing the Property pursuant to the Redevelopment plan." (Am. Compl. ¶ 144; see also ¶ 147(a)-(h).)

Defendant's statement about the enforceability of the 1927 Deed Restriction, while undeniably material to Plaintiff's decision to purchase its title insurance policy and therefore complete its purchase of the Property, is not a "fact" for the purposes of fraud claims. "[N]ot just any erroneous statement will constitute a misrepresentation prohibited by the [NJCFA]. The misrepresentation has to be one which is material to the

17

transaction and which is a statement of fact, found to be false . . . ." <u>Gennari</u>, 691 A.2d at 366. "[S]tatements of opinion are not misrepresentations prohibited by the CFA." <u>Baughman v. U.S. Liability Ins. Co.</u>, 662 F. Supp. 2d 386, 401 (D.N.J. 2009). The New Jersey Appellate Division summarized the distinction between a representation of fact and an opinion as follows:

> The distinction between fact and opinion is broadly indicated by the generalization that what was susceptible of exact knowledge when the statement was made is usually considered to be a matter of fact. Representations in regard to matters not susceptible of personal knowledge are generally to be regarded as mere expressions of opinion, and this is held to be so even though they are made positively and as though they are based on the maker's own knowledge. Usually, also, to say that a thing is only matter of opinion imports that it is unsusceptible of proof.

<u>Joseph J. Murphy Realty, Inc. v. Shervan</u>, 388 A.2d 990, 993 (N.J. App. Div. 1978) (quoting 37 Am.Jur.2d, Fraud and Deceit, s 46 at 74). As in <u>Baughman</u>, where this Court found "statements of opinion regarding the scope of the insurance policy" insufficient to state a consumer fraud claim, Defendant's statements regarding the enforceability of the Deed Restriction was not "susceptible of exact knowledge when the statement was made" or a "matter susceptible of personal knowledge." Defendant's statements were more akin to legal opinions about enforceability requiring application of principles of law to factual circumstances, but the statements are not themselves facts for the purposes of a consumer fraud claim. Accordingly,

the Court will grant Defendant's motion to dismiss Count III of the Amended Complaint under the NJCFA.

### C. Diversity of Citizenship Jurisdiction

Defendant also argues, by footnote, that this Court lacks jurisdiction because Plaintiff again failed to properly prove diversity of citizenship when it plead the "residences" and not the "domiciles" of each member or partner of Plaintiff's organization. (Def. Br. at 9 n. 6.) Despite Defendant's contention, the Amended Complaint adequately alleges that the "states of citizenship of the partners and/or members of Plantation Bay, LLC, are New Jersey, Pennsylvania, and Florida" and that Defendant Stewart Title Guaranty Company is a citizen of Texas. (Am. Compl. ¶¶ 33 & 34.) Absent any reason to doubt Plaintiff's allegations that these states are not just the residences but the domiciles of each of the individuals who make up the limited liability corporation, the Court finds upon the face of the complaint that complete diversity exists between the parties and this Court has jurisdiction to hear the case.

### V. CONCLUSION

An accompanying Order will be entered.

| | |
|---|---|
| August 29, 2016 | s/ Jerome B. Simandle |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |