```
                         UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY


PLANTATION BAY, LLC,                )    15-CV-2042-(JBS/AMD)
                                    )
              Plaintiff,            )
                                    )
       vs.                          )
                                    )
STEWART TITLE GUARANTY              )
COMPANY, et al,                     )    Camden, NJ
                                    )    January 17, 2018
                 Defendants.        )    11:03 a.m.


                TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
                  BEFORE THE HONORABLE ANN MARIE DONIO
                    UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:          THOMAS W. SHERIDAN, ESQUIRE
                            CHRISTOPHER D. HINDERLITER, ESQUIRE
                            FRANCESCO MANGIARACINA, ESQUIRE
                            SHERIDAN & MURRAY, LLC
                            424 S. Bethlehem Pike, Third Floor
                            Fort Washington, PA  19034


For the Defendants:         JOSHUA R. ELIAS, ESQUIRE
                            GIBBONS, PC
                            One Gateway Center
                            Newark, New Jersey  07102


Audio Operator:             SUSAN BUSH


Transcribed by:             DIANA DOMAN TRANSCRIBING, LLC
                            P.O. Box 129
                            Gibbsboro, New Jersey  08026
                            Office:  (856) 435-7172
                            Fax:     (856) 435-7124
                            Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

2

1                               I N D E X

2

3    COLLOQUY:                                              PAGE

4      By Mr. Hinderliter                                     3

5      By Mr. Sheridan                                      5, 9

6      By Mr. Elias                                           7

7

8

9    ARGUMENTS:                                             PAGE

10   Ref: request of the defendants to broaden the scope of the

11   Court's prior ruling

12     By Mr. Elias                           11, 17, 20, 27

13     By Mr. Mangiaracina                        14, 18, 27

14     By Mr. Sheridan                                      22

15

16

17   RULING BY THE COURT:                                   PAGE

18   By Judge Donio                                          29

19

20

21   *** Transcriber's note -- Unidentified Counsel designation had

22   to be used in this document when speaker did not note who he

23   was.   Transcriber used context in other instances to determine

24   speaker when not identified.

25

Colloquy                                                3

1      (The following telephone conference was heard at

2  11:03 a.m.)

3          THE COURT:  Good morning, this is Judge Donio.

4  We're on the record for a status conference in Case Number 15-

5  2042.  This conference is being electronically recorded and I

6  would ask that each time you speak you identify yourself for

7  the record.  Let's begin with plaintiff's counsel.

8          MR. HINDERLITER:  Good morning, Your Honor, Chris

9  Hinderliter for the plaintiff.

10          MR. SHERIDAN:  Good morning, Your Honor, Tom

11  Sheridan for the plaintiff as well.

12          MR. MANGIARACINA:  And Frank Mangiaracina for

13  plaintiff.

14          THE COURT:  Thank you.

15          MR. ELIAS:  And for the Defendant Stewart Title

16  Guarantee Company, Joshua Elias of Gibbons, PC Your Honor.

17          THE COURT:  All right, thank you.  I do have a

18  couple letters that the parties have submitted concerning an

19  issue on the attorney-client waiver issue, but before we get

20  to that may I have a status on the factual discovery, please,

21  starting with plaintiff's counsel.

22          MR. HINDERLITER:  Sure, Your Honor.  At this point

23  in time the Nehmad Firm has completed its response to

24  Stewart's subpoena.  As well, the Giordano Firm has completed

25  its response.  We currently served subpoena to them.  The one

1    additional issue that is outstanding with respect to the

2    plaintiff's discovery is the question of redactions and we've

3    had documents on the basis of privilege and whether it's --

4    these redactions are of matters involving primary business

5    purpose or involving the legal advice.

6         We did receive a certification from Stewart on

7    Monday and we're expecting a revised privilege log I believe

8    counsel said by early next week.

9         At that point in time we are going to reassess what

10   is happening, Your Honor, and it may be possible -- it may be

11   necessary depending on, you know, what the status of things

12   are at that point in time to move to compel production of

13   certain documents and perhaps remove some of the redactions

14   which are in place.  And I think other than starting to

15   schedule depositions, those are the only issues that are out

16   there right now.

17        THE COURT:  Well, it's time to get the depositions

18   scheduled and so --

19        MR. HINDERLITER:  Yes.

20        THE COURT:  -- and so if you still have the

21   privilege issues, you still need to get these depositions

22   scheduled.  You'll have to send me a letter obviously before

23   you submit a motion but I need you to continue with the

24   discovery because I don't anticipate extending the fact

25   discovery deadline which as I understand it is currently April

1    30th, so get your depositions scheduled.  It's a --

2                MR. SHERIDAN:  Your Honor, this is Mr. Sheridan.

3                THE COURT:  Yes.  We hear you loud and clear on

4    that.  The only concern we have, Judge, is, you know, these

5    documents that are at issue that have been redacted and

6    withheld will be critical to the deposition examinations

7    because it relates to Stewart's -- how they adjusted this

8    claim and how they handled it and their awareness of the title

9    defect.

10               And so, you know, one of these we're being careful

11   about is we don't want to schedule and conduct depositions and

12   then possibly subsequently get additional documents that may

13   require us to re-depose the witnesses.

14               So we've been working together to try and resolve

15   this issue.  If we can't, we would probably be able to send a

16   letter next week and if a motion is necessary, get that filed

17   very quickly, Your Honor.

18               THE COURT:  When did you get the first privilege

19   log?  Because I obviously issued a fair amount of opinions

20   some time ago on these first round of waiver and privilege

21   issue, so what -- when did you --

22               MR. SHERIDAN:  I'm not sure, Your Honor, the time

23   line of that, but I can tell you that counsel just un-redacted

24   additional documents and produced them.  So this has been

25   ongoing and they have been working, you know, fairly well

1    together to resolve it.  But, you know, there was just an

2    additional production -- I think January 12th perhaps?

3              UNIDENTIFIED SPEAKER:  Correct.

4              MR. SHERIDAN:  And we're waiting for the redacted

5    privilege log, Your Honor, and you know, we're going to be

6    able to I think make a quick determination whether we need to

7    file a motion over the remaining issues and I think it will be

8    relatively discreet.

9              But I can assure you, Judge, we have been working

10   efficiently and diligently on this and it's been interactive

11   and, you know, as I said it resulted in just last week an

12   additional production.

13             THE COURT:  Okay.  And maybe defense counsel knows

14   when they sent the first privilege log.

15             MR. ELIAS:  Yes, Your Honor -- this is Joshua Elias

16   for Stewart Title -- the first privilege log we sent

17   approximately a year ago.

18             THE COURT:  Okay.  So that was what I thought

19   because we already had a round of motions so I'm just -- Mr.

20   Sheridan, I hear that you're working through the issues.  I

21   don't know what the time line was and whether you raised a

22   concern about the business versus attorney advice issue on a

23   privilege log back a year ago or you just raised it recently

24   and you're working it out.

25             But this is a 2015 case and you're going to have to

Colloquy                                    7

1   get the depositions scheduled.  And if there's a privilege

2   problem you need to let me know sooner than later but that

3   doesn't mean I'm going to be able to resolve the motion

4   immediately.  You've had the log for a year so I really don't

5   have much choice.  It's a 2015 case.

6        MR. SHERIDAN:  Okay, I understand.  But we hear you

7   loud and clear, Your Honor.

8        THE COURT:  Okay.  Now, that's just some of the

9   Stewart depositions.  What about other people?  Is there

10  anybody else being deposed?

11       UNIDENTIFIED SPEAKER:  Well, Your Honor, that

12  pertains to -- you know, three or four of the depositions

13  potentially.  You know, certainly there's going to be several

14  others and we're going to work with counsel to schedule them

15  as soon as possible.

16       THE COURT:  Okay.  Other than this privilege log

17  issue -- the privilege issue on a number of documents and I'm

18  not really sure how many we have at issue.  What is left for

19  plaintiff besides  taking the depositions?

20       UNIDENTIFIED SPEAKER:  I don't believe that there's

21  anything besides that, Your Honor.

22       THE COURT:  All right.  Now from defense.  Mr.

23  Elias, are you planning to take any depositions?

24       MR. ELIAS:  Yes, Your Honor.  We -- just to clarify

25  the status of the subpoenas to the Giordano Firm, the one I

1    guess marginal production is not entirely complete yet for the

2    time period I believe from January 1, 2009 through 2011.   The

3    Giordano Firm is still in the process of gathering those

4    documents so we expect a production from them hopefully in the

5    near future and at that point once we review those documents,

6    we'll be in a position to take the depositions of

7    representatives of Plantation Bay and the Giordano Firm and we

8    will also be looking to take a deposition of Fox Rothschild.

9            THE COURT:   All right, well you need to get them

10   scheduled and if you -- you know, you're still awaiting

11   documents and somebody's not being efficient in getting them

12   to you, you'll have to send me a letter, okay?

13           MR. ELIAS:   Yes, we will do that, Your Honor.

14           THE COURT:   Now other than awaiting the documents

15   from that subpoena and the letter issue -- the issue you

16   raised by letters, or anything else from the defense for

17   discovery purposes?

18           MR. ELIAS:   We have a couple of outstanding items

19   that we've written plaintiff's counsel about at the end of

20   2017.   Nothing I don't think is ripe to bring to Your Honor's

21   attention right now but it has to do with the email production

22   from Plantation Bay and their -- their privilege log.

23           THE COURT:   All right, well again as I indicated to

24   defense -- to plaintiff -- defense, you're on notice as well,

25   that the depositions need to be completed by April 30th and to

1    send me a letter in February with a motion issue doesn't mean

2    I can turn it around in the next day, given the number of

3    cases the Court manages.  So it's time to get these

4    depositions scheduled, it's been a 2015 case as I've indicated

5    and the last bulk of motions took some time because they were

6    very detailed, but the Court had rendered its opinion back --

7    I think it was September, right?

8             UNIDENTIFIED SPEAKER:  Yes, the end of September,

9    Your Honor.

10            THE COURT:  All right.  So we're now three months

11   past that -- four almost, and I still don't hear any

12   depositions having been done so --

13            MR. SHERIDAN:  Well, Judge -- and this is Mr.

14   Sheridan --

15            THE COURT:  Yes.

16            MR. SHERIDAN:  -- you know, in all fairness to the

17   parties, Your Honor, we waited a long time from the District

18   Court Judge to issue his opinion on the motion to dismiss so,

19   you know, there was a lot of briefing time there.  It's not as

20   if, you know, discovery has been open for the parties for two

21   years and we've deliberately drug our feet.  I just want the

22   Court to be aware of that.

23            THE COURT:  No, I --

24            MR. SHERIDAN:  There was a long, long -- it was a

25   long, long delay I believe from Judge Simandle, okay, getting

Colloquy                                            10

1   his decision and then the decision was to allow us to file

2   amended complaint -- an amended complaint.  There was a

3   subsequent motion to dismiss and then there was a long time

4   for Judge Simandle to issue his opinion on that so, you know,

5   I realize this is a -- you know, 2015 case but at the same

6   time it's not a case where we've been engaged in discovery for

7   two years.

8               THE COURT:  No, I understand and, you know, your

9   comments are noted on the record.  It's just that as of

10  September of this year we were done with any pending motions.

11  The parties were supposed to be moving expeditiously through

12  discovery and now we're at the end of January and I still

13  don't hear a deposition having been noticed.  So --

14              MR. SHERIDAN:  Well, Judge, it's a case -- again,

15  just, you know, that we're aware, it's a case that's unusual

16  in that the defendants are seeking discovery of privileged

17  information from prior law firms going back ten years of our

18  clients, and I think that's one of the things that, you know

19  -- and this is a complex case with unusual issues.

20              It's not a simple, you know, breach of contract or

21  slip-and-fall case that we customarily see.  So, you know, I

22  just wanted to bring that to the Court's attention.  You know,

23  it's a complex litigation matter and, you know, that's what

24  has rendered it to be a little bit more protracted than usual.

25              THE COURT:  All right.  Well it's time to move it

1    forward.  If you don't find that you are receiving a

2    satisfactory answer on the privilege log, send me a letter

3    promptly and let's get dates scheduled for the depositions

4    toward, you know, the end of February and the month of March

5    and the month of April.  There's plenty of time to get the

6    discovery done I think.

7              MR. SHERIDAN:  We'll do that, Your Honor.  We hear

8    you loud and clear.

9              THE COURT:  Okay.  Now, I have reviewed the letter

10   submissions on the request of the defendants to broaden the

11   scope of the Court's prior ruling and permit additional dead

12   -- dates for the subpoena of documents from the Giordano Firm

13   as it relates to the Court's determination of waiver of

14   privilege.  I have read the letters.  Is there anything

15   further either party wishes to address to the Court?

16             MR. ELIAS:  Yes, Your Honor.  This is Josh Elias for

17   Stewart Title Guarantee Company, and I certainly don't want to

18   revisit the arguments that we've made on the record before

19   Your Honor either in the motions or in December.

20             But I -- you know, what we focused on in December

21   was the idea that -- or what Your Honor found in your

22   September 29 opinion, that plaintiff's argument that it relied

23   on Fox Rothschild's advice should be belied by its

24   communications on the same subject with its other retained

25   counsel, and in December we identified what that subject was.

1          It wasn't limited just to the actual settlement

2    agreement document, but to, you know, the advice relating to

3    the substance of it -- what they're agreeing to by settling

4    that matter which was the offer to grant the deed restriction

5    and from limits development on the property.

6          And if that was the substantive scope, the question

7    then is then just when in time -- at what point in time was

8    that advice from the Giordano Firm provided to Plantation Bay.

9    And we initially served a subpoena limited to the creation and

10   execution of the settlement agreements which as we know,

11   didn't bring back the advice relating to those subject

12   matters.

13         At the December conference Your Honor acknowledged

14   that and expanded that time frame to communications leading up

15   to the December, 2007 memorandum of understanding.  But in

16   doing so, Your Honor understood that this again may not bring

17   back that advice, so Your Honor expressly stated that if it --

18   if the advice that Stewart Title is entitled to is not in

19   those documents, come back and see me, and so that's where we

20   are now.

21         You know, the previously authorized subpoena brought

22   back a similar document that didn't provide the -- the advice

23   on the deed restriction or the development, so Stewart Title

24   is requesting the Court's authorization for service by a

25   subpoena for this advice between July of 2006 and December of

1    2008.

2             Now, last night Plantation Bay filed their letters.

3    I know Your Honor is reviewing and I just want to address a

4    couple of points made there.  Plantation Bay argues that our

5    dissatisfaction with the result of that subpoena is -- doesn't

6    give rise to our right to seek further privileged

7    communications.

8             Well, in fact it does.  We're looking for a

9    particular set of communications and if the narrow subpoena

10   that the Court previously authorized didn't capture those,

11   that is precisely the reason Your Honor authorized Stewart

12   Title to come back to the Court.

13            Also, plaintiff claims that, you know, our recent

14   request is I guess back-peddling from a prior position that we

15   took that the 2007 Memorandum of Understanding was the key to

16   the settlement agreement.

17            But Stewart Title has said all along, as we said in

18   the -- in our briefing and in our November letter that leading

19   up to the December hearing, the settlement discussions in the

20   underlying matter were fluid since the inception of the

21   builder's remedy suit and that, Your Honor, I think is made

22   clear in our November 17 -- November 15th, '17 letter at

23   document 83.

24            And as far as the good cause standard that

25   Plantation Bay's counsel identifies, they have argue Stewart

1    Title should have to demonstrate with a reasonable probability

2    that additional responsive documents exist.  And normally in a

3    typical case, that's a pretty simple undertaking.  You look at

4    the privilege log.

5              But unfortunately here Plantation Bay has failed in

6    both its production preservation efforts and they served a

7    privilege log containing only nine entries despite five years

8    of litigation in the underlying matter, so now we're sort of

9    operating in the dark here and the reason for that lays

10   directly at Plantation Bay's feet.

11             But in any event, you know, I think the documents

12   that are attached to my letter from yesterday and September of

13   2006, November of 2000 (sic) show that that Plantation Bay was

14   contemplating settlement of the builder's remedy suit through

15   a deed restriction or a settlement agreement containing a deed

16   restriction in the time frames requested.

17             And so Stewart Title believes that good cause does

18   exist for the requested subpoena in order to discover facts

19   relating to advice Plantation Bay has placed at issue and

20   which have significant bearing on Stewart Title's defenses in

21   this case.

22             THE COURT:  Any response?

23             MR. MANGIARACINA:  Yes, Your Honor.  This is Frank

24   Mangiaracina on behalf of the plaintiff.  Your Honor, at the

25   outset I think this needs to be framed for perspective.  This

1    entire dispute arises out of what the Court determined the

2    plaintiff placed at issue and we can't forget that and that's

3    the advice plaintiff claims that Fox Rothschild told us to

4    enter the 2008 settlement agreement.

5            Now Stewart is saying well because that's what Fox

6    Rothschild told us, they should be able to see what Plantation

7    Bay's prior counsel stated regarded entering that settlement

8    agreement, and that's what the Court's September, 2017 order

9    stated, Your Honor.

10           And then in December when we had the status

11   conference, we met to really define the outer limits of that

12   order so extended arguments, extended evaluation by the Court,

13   the Court determined that the negotiations surrounding the

14   Memorandum of Understanding was an appropriate cut off date

15   and so that date was based on the waiver -- the privilege

16   waiver made by plaintiffs.

17           The Court did leave open in fact after studying that

18   date that Stewart may be able to come back and ask for more

19   documents if they show good cause.  Now, here what Stewart is

20   saying is that they received one responsive document.

21           However, the fact -- the number of documents that exist

22   in response to a subpoena cannot be the good cause to justify

23   expanding or contracting that subpoena.  Your Honor, I mean if

24   you flip this on its head and Stewart and Schneider -- Mr.

25   Schneider came back with 10,000 documents, the plaintiff

1   couldn't come to the Court and say I think this should be

2   narrowed because so many documents were created.  And that

3   logic goes both ways.

4        It's because there's no nexus between  the

5   justifications underlying the temporal scope of the subpoena

6   and the actual documents that that subpoena turns up after the

7   scope is set.  They're totally separate things.  The reason

8   you set the time frame for the scope is based on what

9   privilege plaintiff has waived.

10        The documents that the subpoena turns up have no

11   connection to why you set the subpoena to the time frame that

12   Your Honor did.  And counsel for -- for Stewart Title argues

13   that they just presume that these documents exist, but the

14   fact that based on the originally authorized subpoena only one

15   documents or one responsive document came back, that undercuts

16   their argument.

17        If only one responsive document came back for the

18   seven months prior to the 2008 settlement agreement, it's

19   highly unlikely that more responsive documents exist regarding

20   the 2008 settlement agreement even further back in time.

21        So in summary, Your Honor, the Court said that

22   Stewart could ask for a broader time frame if they showed good

23   cause and the number of documents produced in response to the

24   first subpoena is not good cause sufficient to justify further

25   infringing plaintiff's privilege.

1          THE COURT:  Okay.  Anything further?

2          MR. ELIAS:  Yes, Your Honor, Josh Elias for Stewart

3   Title, if I could just briefly respond.  I think what counsel

4   is trying to do really is revisit the arguments that we made

5   on December 7th.

6          What Your Honor has already found is it's not just

7   the advice to sign this settlement agreement, it's the

8   substance of the settlement agreement, what the advice --

9   what's contained within the settlement agreement and what's

10  evidence of that is what we already agreed to in the prior

11  subpoena that's set forth in the consent order and it's

12  related to the offer of the deed restriction for the

13  limitation of redevelopment.

14         As far as the number of documents that are captured

15  from a subpoena is not good cause, that's correct.  I don't

16  dispute that.  Whether it's one or 100 documents that came

17  back, it's the substance.

18         It's the substance of the documents that matter and

19  what we're seeking here is the advice from the Giordano Firm

20  to Plantation Bay relating to the deed restriction or the

21  limitation of redevelopment which was not brought back.

22         But what's important here is that only one document

23  was brought back and what that says is that what we've crafted

24  here is a narrowly tailored subpoena -- without risk of

25  bringing back any other advice that had no bearing on the

1    issue here.  So to the extent counsel says that we are

2    presuming that other documents exist and no other documents

3    may exist, well then so be it.

4            Allow us to serve the subpoena and if no more

5    documents come back, then that's the end of it and we'll save

6    our questions for deposition.  But they've placed this at

7    issue and because of that, Stewart Title should be entitled to

8    those documents.

9            MR. MANGIARACINA:  Your Honor, if I may just be

10   heard briefly on that again?

11           THE COURT:  Go ahead.

12           MR. MANGIARACINA:  Counsel for Stewart claims that

13   we're attempting to readdress the arguments raised during the

14   December status conference, and in reality, Your Honor, it's

15   Stewart that's readdressing these -- these arguments.

16           This issue was litigated, it was argued and the

17   Court determined that the negotiations undermining -- the

18   negotiations leading up to the Memorandum of Understanding was

19   the appropriate cut off date.  So really the key issue now is

20   whether any new information has been uncovered to substantiate

21   the good cause necessary to disrupt the Court's December 7th

22   rule.

23           Stewart talks about the substance of what the

24   subpoena turned up, but there's nothing in the substance of

25   what the subpoena turned up to justify expanding the time

1    frame and further infringing on plaintiff's privilege to go

2    fishing for more documents that no good cause is demonstrated

3    may exist.

4            I mean, the fact of the matter is that all privilege

5    waivers need to be narrowly construed and if Stewart keeps

6    coming back and pushing and pushing and pushing further back,

7    you know, it's really bending the limits of this -- of this

8    requirement that the waivers be narrowly construed beyond its

9    limits, Your Honor.

10           THE COURT:  Well, maybe we should do it this way.

11   I'm looking -- the December 13th, 2007 letter that Mr.

12   Schneider produced, this is the only letter, correct?

13           MR. ELIAS:  Yes, Your Honor.

14           THE COURT:  And it's Exhibit A to document -- or to

15   the letter dated January 16th, 2017, correct?

16           MR. ELIAS:  Yes, Your Honor.

17           THE COURT:  And so Mr. Schneider -- and he's still

18   at the Giordano Firm, right?

19           MR. ELIAS:  Yes, Your Honor.

20           THE COURT:  All right.  So he's responding to the

21   subpoena and he's viewing this letter as responsive to any

22   communications concerning the December 28th, 2007 Memorandum

23   of Understanding, correct?

24           MR. ELIAS:  It appears so, yes.

25           THE COURT:  And there's been no other production

Elias - Argument                                    20

1    that he viewed as -- in his documents -- as concerning the

2    Memorandum of Understanding, so let me point this to Stewart's

3    counsel first.  I'm looking at the consent order.  There was

4    no deadline that or no restriction in his review that said the

5    document had to be dated a certain date except for the end

6    date, correct?

7              MR. ELIAS:  That's correct.

8              THE COURT:  So why --

9              MR. ELIAS:  It was relating --

10             THE COURT:  So why --

11             MR. ELIAS:  I'm sorry, go ahead, Your Honor.

12             THE COURT:  So it says negotiations concerning the

13   Memorandum of Understanding that relate to the deed

14   restriction or offer -- or grant of a restriction, so what is

15   your basis to conclude that there are other documents even if

16   we draft it the way you wish me to revise the subpoena order?

17             MR. ELIAS:  Well, Your Honor, the -- as you see in

18   Exhibit C and Exhibit D, there were offers from Plantation Bay

19   to settle this builders remedy suit early on in this

20   litigation to -- that would include a limitation on

21   development and an offer to -- for a deed restriction, and

22   whether the City of Somers Point at that point in time felt it

23   was in their best interest to agree to that is neither here

24   nor there.

25             Ultimately I guess in 2008 they thought or with the

1    Memorandum of Understanding in 2007 they ultimately signed

2    something that's substantially similar, but the advice that

3    the Giordano Firm provided to Plantation Bay about making that

4    offer would -- very well happens much earlier than just when

5    they ultimately signed the Memorandum of Understanding.

6              As you can see in Exhibit C, there's a November,

7    2006 draft settlement agreement signed by Plantation Bay which

8    includes the deed restriction and the limitation on the

9    redevelopment, presumably things -- advice from counsel about

10   whether it was in Plantation Bay's best interest to enter that

11   and to do that at that point in time.

12             And by providing that agreement -- that by providing

13   that advice in 2006, that likely followed along to -- you

14   know, when they ultimately made that offer again in 2007 from

15   the Memorandum of Understanding and ultimately signing the

16   settlement agreement in 2008.

17             THE COURT:  Are you planning to take his deposition?

18             MR. ELIAS:  Yes, Your Honor.

19             THE COURT:  So you don't really know whether the

20   advice that you're seeking was given by verbal communication,

21   correct?

22             MR. ELIAS:  I do not.

23             THE COURT:  So it may be that there's a lack of

24   letters because all the discussions were by phone or in

25   person.

1          MR. ELIAS:  It could be, Your Honor, but at the same

2     time, you know, like I said earlier, typically we'd have the

3     benefit of a privilege log and we don't have that here and

4     Plantation Bay's failure to provide an adequate privilege log

5     here shouldn't be visited on Stewart Title and prevent us from

6     getting documents that we would otherwise be entitled to.

7          THE COURT:  All right.  Just remind me why

8     Plantation doesn't have the documents.

9          MR. ELIAS:  That I don't -- I can't answer that

10    question for you, Your Honor.  I don't know.

11         MR. MANGIARACINA:  Your Honor, we produced all the

12    documents we had and we claimed privilege for the privileged

13    documents.  Whatever Mr. Schneider's producing in response to

14    his subpoena has absolutely nothing to do with our privilege

15    log or the documents that we produced in discovery.

16         THE COURT:  Well, the question is if Mr. Giordano

17    had the document, why didn't your client have the document and

18    did it show up in the privilege log.

19         MR. SHERIDAN:  Well, Judge, this is Mr. Sheridan.

20    If Mr. Giordano doesn't have the document and he still works

21    at that firm and preserved his file, why would we presume that

22    the principals of Plantation Bay would have them?

23         THE COURT:  No, I --

24         MR. SHERIDAN:  I mean, it's a preposterous argument

25    by Mr. Elias.  I mean it's just absurd.

1        THE COURT:  I'm going to ask you to answer my
2   question that I'm talking about, the December 13th letter,
3   2007.  Did that show up on Plantation Bay's privilege log?
4        UNIDENTIFIED SPEAKER:  Your Honor, I don't believe
5   that it did.
6        UNIDENTIFIED SPEAKER:  But, Your Honor, I don't know
7   necessarily if Plantation Bay produced that in their
8   production.
9        THE COURT:  I would just ask you to speak your name
10  when you speak because I'm having a hard time figuring out who
11  just said that.
12       MR. MANGIARACINA:  I apologize, Your Honor.  This is
13  Frank Mangiaracina.
14       THE COURT:  Yes.  So the question really is is there
15  other documents between Plantation Bay and Mr. Giordano that
16  discuss the deed restriction and advice about a deed
17  restriction that were a part of the formation of the decision
18  to enter into the Memorandum of Understanding.  That's what
19  Stewart is looking for, correct, Mr. Elias?
20       MR. ELIAS:  Well, Your Honor, I think it would be --
21  you know, whether it -- yes and no.  To limit it just to the
22  Memorandum of Understanding I think might unnecessarily narrow
23  this.  Ultimately yes, that did lead to the Memorandum of
24  Understanding, but the extent, you know, there is advice
25  relating to the November, 2006 settlement agreement which

1    contains those same terms, I think that's -- that's the same

2    advice.

3              THE COURT:  Well yes, but I've already ruled on that

4    so I'm saying to the extent that -- for example, let's play it

5    out.  Mr. Schneider -- I'm looking at his letter and he says

6    "I repeat my" -- "I repeated my view."  Well, when did he

7    first give the view that the deed restriction is more of a

8    political issue than a legal issue?

9              I don't know when he repeated it.  But he clearly --

10   the way he addressed this is as follows.  Let's permit a -- so

11   first of all, Mr. Giordano's letters to Plantation Bay can be

12   obtained directly from Plantation Bay, correct?

13             MR. MANGIARACINA:  Yes, Your Honor.

14             THE COURT:  So you should --

15             MR. MANGIARACINA:  To the extent --

16             THE COURT:  So you should have them and you could

17   put them on a privilege log.

18             MR. MANGIARACINA:  Your Honor, everything that --

19   everything that was determined to be waived -- the waiver of

20   privilege based on the September opinion has been produced.

21   We reevaluated our privilege log in light of that opinion.

22   Everything in our possession that's responsive and relevant

23   has been produced.  So to the extent that any of those

24   documents exist, Stewart has them.

25             THE COURT:  No --

1          MR. ELIAS:  Your Honor, they're -- Your Honor, Josh

2    Elias from Stewart Title -- there are nine entries on the

3    privilege log.  We have never received a single document from

4    Plantation Bay following Your Honor's ruling.  The documents

5    that we've received from the Giordano Firm in response to the

6    subpoenas authorized as a result of Your Honor's September 29

7    opinion retrieved documents that we have never seen before.

8          THE COURT:  Okay.  So that's the issue that Mr.

9    Elias is raising -- why aren't these same letters on the

10   privilege log of Plantation Bay.

11         MR. MANGIARACINA:  Your Honor, it's because

12   Plantation Bay doesn't have them.

13         THE COURT:  Okay, so call Mr. Giordano up and get

14   them from him.  It's within your custody, control and

15   possession to obtain documents from your -- your former

16   attorney, correct?

17         I mean, why should we be talking in the abstract?

18   We really should know whether there are five or six other

19   letters that relate to the deed restriction and then you take

20   the --

21         MR. SHERIDAN:  Judge, from what time period -- this

22   is Tom Sheridan -- from what time period?

23         THE COURT:  Okay --

24         MR. SHERIDAN:  Because I'm lost, I'm not following

25   what --

1          THE COURT:  All right, so look, I can't -- let me

2     ask you this question.  You have three different plaintiff's

3     lawyers so you need to designate one person who's going to

4     address the Court on these issues and that's fine, it doesn't

5     matter to me who it is, but I can't really have three

6     different lawyers arguing the case.

7          MR. SHERIDAN:  Judge, I'm not arguing the case, I'm

8     just trying to understand -- this is Tom Sheridan.  Mr.

9     Mangiaracina will answer your questions, Judge, but I'm just

10    -- you're saying -- I'm not sure for what time period you want

11    to go back in time.  I don't understand that question, that's

12    all.

13         THE COURT:  Let me rephrase it this way.  The Court

14    issued an order and permitted a subpoena to be issued.  Mr.

15    Giordano produced one document in response to that subpoena.

16    The question becomes where -- why that document was never

17    produced by Plantation Bay.

18         That's issue number one.  And you say well,

19    Plantation Bay didn't have the documents.  Well, I'm just

20    wondering whether you've obtained the file of the relevant

21    documents from Giordano yourself, because we shouldn't be

22    operating in the abstract of whether the documents exist or

23    don't exist.  What we should be doing is dealing with whether

24    the privilege has been waived for that period of time or not.

25    That --

1           MR. MANGIARACINA:   Your Honor -- excuse me.

2           THE COURT:   I have to know who is speaking.

3           MR. MANGIARACINA:   This is Frank Mangiaracina for

4    plaintiffs.   Just to address your two points, we have not

5    requested the file from -- from Giordano Firm, nor have we

6    interfered in his compliance with the subpoena.   The reason we

7    -- the documents we produced were in the possession, custody

8    and control of Plantation Bay.

9           We did not affirmatively go to Giordano Firm and

10   request his file from the underlying litigation, and that

11   could explain the disparity between the documents he's

12   producing and the documents produced by plaintiff.

13          MR. ELIAS:   Your Honor, this is Josh Elias for

14   Stewart Title.   The documents that we're seeking are documents

15   between the Giordano Firm and representatives of Plantation

16   Bay, so they should be documents that Plantation Bay had in

17   its possession, and now they're saying they don't have those

18   documents in their possession yet at the same time, they're

19   telling us that we shouldn't be entitled to ask the Giordano

20   Firm for these documents that we are otherwise entitled to.

21          MR. MANGIARACINA:   Your Honor, this is Frank

22   Mangiaracina.   I would like to address that in two parts.   The

23   first part is that there's one document that plaintiff did not

24   have in their possession that was handed over by the Giordano

25   Firm.   That does not mean by any measure that other documents

 1    exist.

 2              As we stated, we produced everything we have.  And

 3    more importantly, we're not stating that the documents -- the

 4    privilege documents for which the waiver has been -- the

 5    privilege has been waived -- we're not arguing that they

 6    shouldn't be produced.

 7              Rather, we're arguing that -- we're contending that

 8    this issue has been litigated, has been resolved by the Court

 9    and a window for the privilege waiver has been set and Stewart

10    has not demonstrated the good cause necessary to extend that

11    window.

12              And the fact that Mr. Giordano's firm may have one

13    document that plaintiff did not have in its possession,

14    custody or control does not justify extending a privilege

15    waiver window from seven months to two years when the rules

16    require and the law requires that all waivers be narrowly

17    tailored to the actual subject matter placed in issue.

18              MR. ELIAS:  Your Honor, Joshua Elias for Stewart

19    Title.  It is not just one document that we've identified that

20    has not been produced by Plantation Bay.  As Your Honor

21    recalls, the initial subpoena that resulted from Your Honor's

22    September 29 opinion that ultimately led to our December

23    conference brought back additional documents that were not

24    part of Plantation Bay's production.

25              And additionally, again, there were only nine

1    entries on their privilege log from an underlying litigation

2    in which the Giordano Firm was primarily involved for over

3    five years.   It's just patently unreasonable for that to be

4    the only documents that are there.

5              THE COURT:   All right.   Here's what I'm going to do.

6    I'm going to let you, Mr. Elias, take a deposition of Mr.

7    Giordano and you can ask him what advice he gave to the

8    plaintiffs -- Plantation Bay with respect to the December

9    28th, 2007 memorandum, and then you can ask him whether the

10   advice he gave was repetitive or did he in any way incorporate

11   prior advice.

12             And if the answer is yes, then I may order the

13   additional documents.   If he says no, all the advice that I

14   gave with respect to this particular memorandum is -- was

15   verbal and here it was plus this letter, that's one thing.

16             On the other hand, if he says it was a process, we

17   built on it, they knew my views about the deed restriction and

18   the builder's remedy and, you know, I talked them -- you know,

19   numerous times, well then that's going to be good cause to

20   you, go back and get those documents and I'll let you re-

21   depose him, okay?   Let's get his deposition first.

22             MR. ELIAS:   Understood, Your Honor.

23             MR. SHERIDAN:   So, Your Honor, this is Mr. Sheridan.

24   For clarification, right, I think what I understand the

25   Court's ruling to be is that Mr. Elias is going to be able to

1   ask our client's attorney to waive his privilege and testify

2   about any discussions whatsoever from any point in time about

3   their state of mind in attempting to settle this litigation?

4           THE COURT:  Mr. Sheridan, you paraphrased completely

5   incorrectly what the Court just said, so maybe you should

6   order the transcript, but what I'm allowing Mr. Elias to do is

7   do an inquiry of the -- within the same scope as the prior

8   order.

9           But if Mr. Giordano says this was my advice, then

10  the next question is and was the advice -- did you in any way

11  repeat or rephrase or otherwise incorporate prior advice, and

12  if his answer is yes, that's going to potentially open the

13  door to the prior advice.

14          MR. SHERIDAN:  I understand, Your Honor.  I'm sorry.

15          THE COURT:  Mr. Elias, you understood the Court's

16  order from the bench?

17          MR. ELIAS:  I do, Your Honor.

18          THE COURT:  Okay.  So I hope I don't get any calls

19  about the deposition, but please feel free to make sure the

20  date you schedule the deposition of Mr. Giordano is a date

21  that I'll be available for calls, okay?

22          MR. ELIAS:  Yes, Your Honor.

23          MR. MANGIARACINA:  Yes, Your Honor.

24          THE COURT:  All right.  Is there anything else then

25  for today?

1          MR. ELIAS:  No, Your Honor, that is all from

2     defendant.

3          THE COURT:  All right, counsel, you all have a good

4     day.  We are adjourned.

5          ALL COUNSEL:  Thank you, Judge.

6          (Matter concluded, 11:42 a.m.)

7                              * * *

8

9

10

11               C E R T I F I C A T I O N

12

13          I, Diane Gallagher, the court approved transcriber,

14     certify that the foregoing is a correct transcript from the

15     official electronic sound recording of the proceedings in the

16     above-entitled matter.

17

18     _____        _____

19     DIANE GALLAGHER                         DATE

20     DIANA DOMAN TRANSCRIBING, LLC

21

22

23

24

25